**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

AUGUSTA NATIONAL, INC.,                )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )    Civil Action Number: _____
                                       )
GREEN JACKET AUCTIONS, INC.,           )
                                       )
            Defendant.                 )

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY
AND PERMANENT INJUNCTION TO STOP THE AUCTION OF
STOLEN AND COUNTERFEIT ITEMS, AND TO RECOVER SAME**

Plaintiff Augusta National, Inc. ("ANI") hereby files this Complaint against Green Jacket

Auctions, Inc., Defendant ("Defendant"), and respectfully shows the Court the following:

**<u>INTRODUCTION</u>**

1.      ANI files this action to immediately halt Defendant's auction of property that

belongs to ANI or contains a counterfeit replica of ANI's trademark.  Defendant's auction began

on August 2, 2017, and it is scheduled to conclude on August 19, 2017.  Exhibit "A" attached

hereto contains a list of items advertised in the auction that belong to ANI, or contain counterfeit

reproductions of its trademark.  ANI seeks this Court's intervention to recover the items, and to

immediately grant a temporary restraining order and/or a preliminary injunction enjoining

Defendant from continuing the auction in order to prevent irreparable harm that will result if the

items are transferred to unknown buyers who may live anywhere throughout the world.

## THE PARTIES, JURISDICTION AND VENUE

2.     ANI is a corporation duly organized and existing under the laws of the State of Georgia with its headquarters and principal place of business at 2604 Washington Road, Augusta, Georgia 30904.

3.     Founded in 1932, ANI owns and operates the Augusta National® Golf Club and the world-famous Masters Tournament® in Augusta, Georgia.

4.     ANI's business is primarily conducted and principally located in Augusta, Georgia.

5.     Upon information and belief, Defendant Green Jacket Auctions, Inc. is a company organized under the laws of Florida with a registered office and principal place of business at 3623 Beach Drive, Tampa, Florida 33629.   Defendant's business is conducted in interstate commerce with substantial contacts in all states and territories of the United States, including the State of Georgia.

6.     This is an action for Trover, and related relief, seeking the return of property unlawfully stolen from Plaintiff's premises at 2604 Washington Road, Augusta, Georgia by third parties, unrelated to Defendant, but which property is now in the possession of Defendant as a consignee or other agent.

7.     This is also an action for sale of counterfeit items, trademark infringement, and false advertising under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and specifically 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a)(1).

8.     In bringing this lawsuit, ANI seeks the recovery of its property, a temporary restraining order, a preliminary and permanent injunction, damages, punitive and/or treble damages, attorneys' fees and costs.

9.      This Court has subject matter jurisdiction over the federal trademark and trademark dilution claims under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

11.     This Court has jurisdiction over the property in question and the corporate person of the Defendant.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).  This action arises out of wrongful acts committed by Defendant in this judicial district and which subjects Defendant to personal jurisdiction here.  Because a substantial part of the events giving rise to these claims occurred in this judicial district, venue is proper under 28 U.S.C. § 1391(b)(2). Moreover, Defendant knowingly and intentionally directed, targeted, and inflicted injurious consequences upon ANI and other residents and citizens of the State of Georgia.

## BACKGROUND FACTS

13.     Since 1934, ANI has sponsored and hosted the annual Masters Tournament, one of the four major championships in professional golf.  The Masters Tournament is viewed each year by tens-of-thousands of patrons, in person, and millions more internationally and through the Internet. *See Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.*, No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *2-4 (S.D. Ga. 1976).

14.     Since 1949, a Masters® Green Jacket® has been awarded to the champion of the Masters Tournament. All prior champions also were awarded a Green Jacket.

15.     The Green Jacket is also the official attire worn by members of Augusta National Golf Club (the "Golf Club") while on the Golf Club grounds.

16.     Each year's champion of the Masters is presented with a Green Jacket.  The outside breast pocket of the jacket contains ANI's and the Masters' trademark symbol of the yellow-colored outline of the United States and a distinctive flagstick emanating from the location of Augusta, Georgia.

17.     This champion's jacket is known internationally as the "Green Jacket" and is, probably, the most coveted award in the golfing world.

18.     The policy, customs, and rules of the Masters Tournament and of ANI provide that the Green Jacket presented to the annual Masters champion may not be removed from ANI's grounds except during the first year following its presentation.  Thereafter, it must be stored on ANI premises for use only on the grounds and during the annual Tournament.  Thus, a champion's Green Jacket is owned by ANI with a champion having possessory rights when on the premises of ANI.

19.     Gary Player famously tells the story of having mistakenly taken his Green Jacket home to South Africa after the 1961 Masters, and inadvertently failing to return the Green Jacket in 1962.  After discussions with ANI that year, he was given permission to store the Green Jacket in South Africa subject to the caveat that he never wears the Green Jacket in public.

20.     Member Green Jackets are subject to the same rules.  They must be stored on ANI premises for use only on the grounds and during the annual Tournament.  The only difference is that a member may never remove his/her Green Jacket from the grounds.  When member Green Jackets become worn or torn, they are disposed of and/or preserved by ANI, in its sole discretion, and replaced with a new Green Jacket.  Each Green Jacket is specially marked for identification and authenticity reasons.

21.     The Green Jackets of Masters champions are stored by ANI.

***Nelson Green Jacket - Lot # 1: Byron Nelson's Masters Champion's Green Jacket***

22.     During a physical inventory in 2009, the 1966 Champions Green Jacket of Mr. Byron Nelson (the "Nelson Green Jacket") was confirmed to be in existence and stored at ANI. Specifically, ANI's inventory showed the following with respect to the Nelson Green Jacket:

        a.   Manufacturer – Hart Schaffner & Marx

        b.   Date - 1966

23.     ANI recently became aware that Defendant is advertising the auction of the very same Nelson Green Jacket, with the Jacket to be sold at auction on August 19 at 8:00 PM EST. It has rechecked its inventory and determined that the Nelson Green Jacket is now missing.

24.     As consignee or agent of the unknown seller, Defendant is in wrongful possession of the Nelson Green Jacket, does not hold legal title, and its principal or consignor does not hold legal title.

25.     The alleged interest of either Defendant or its consignor is inferior in every respect to the interest of ANI.

***Butler Green Jacket - Lot # 3: Augusta National Golf Club Member's Green Jacket***

26.     John R. Butler, Jr., is a member of the Augusta National Golf Club.  As a member, he is assigned a member's Green Jacket, which is stored at the Golf Club.

27.     Butler reports to ANI that he has never removed his Green Jacket from the Golf Club and has never consented for it to be sold by Defendant.

28.     ANI recently became aware that Defendant is advertising the auction of the Butler Green Jacket, with the Jacket to be sold at auction on August 19 at 8:00 PM EST.

29.    As consignee or agent of the unknown seller, Defendant is in wrongful possession of the Butler Green Jacket, does not hold legal title and its principal or consignor does not hold legal title.

30.    The alleged interest of either Defendant or its consignor is inferior in every respect to the interest of ANI.

### King Green Jacket - Lot # 2: Only Known "ANGC Patch" Member's Green Jacket

31.    George King was a member of the Augusta National Golf Club for a brief time. As a member, he was assigned a member's Green Jacket, which should have been permanently stored at the Golf Club.

32.    ANI recently became aware that Defendant is advertising the auction of the King Green Jacket, with the Jacket to be sold at auction on August 19 at 8:00 PM EST.

33.    ANI does not have additional facts as to the manner in which the Defendant came into possession of the King Green Jacket other than what is reported on the Defendant's website.

34.    As consignee or agent of an unknown seller, Defendant is in wrongful possession of the King Green Jacket, does not hold legal title and its principal or consignor does not hold legal title.

35.    The alleged interest of either Defendant or its consignor is inferior in every respect to the interest of ANI.

36.    ANI has title and the right of sole possession to the Nelson Green Jacket, the Butler Green Jacket and the King Green Jacket (collectively the "Green Jackets").

37.    As the party entitled to possession of the Green Jackets, ANI is entitled to immediate possession of same.

*ANI Silverware*

38.    Augusta National Golf Club is the owner of specialized silverware with is used exclusively by ANI on the grounds of the Golf Club.

39.    ANI's proprietary silverware bears its trademarked map & flag logo as demonstrated below.



40.    ANI does not sell or gift its proprietary silverware to third parties.

41.    ANI does not release its proprietary silverware into the stream of commerce.

42.    The only manner in which a third-party may come into possession of ANI's proprietary silverware is by stealing it from the grounds of the Golf Club.

43.    ANI recently became aware that Defendant is advertising the auction of ANI's proprietary silver, with the silverware to be sold at auction on August 19 at 8:00 PM EST.

44.    ANI does not have additional facts as to the manner in which the Defendant came into possession of the silverware other than what is reported on the Defendant's website.

45.    The silverware was either stolen, or it is a counterfeit reproduction of ANI's trademarked logo.

46.     As consignee or agent of an unknown seller, Defendant is in wrongful possession of ANI's proprietary silverware, does not hold legal title and its principal or consignor does not hold legal title.

47.     The alleged interest of either Defendant or its consignor is inferior in every respect to the interest of ANI.

48.     ANI has title and the right of sole possession to the silverware, and ANI is entitled to immediate possession of same.

### Green Jacket Auctions History

49.     Defendant is a knowledgeable and sophisticated seller of golf memorabilia with an intimate knowledge of golf history, souvenirs, artifacts and collector items.

50.     Defendant has previously purchased green jackets that were stolen from ANI, and it was forced to return those jackets to ANI upon learning that they were in fact stolen.

51.     Defendant has continuously and systematically targeted the collection and sale of Augusta National and Masters related items.

52.     For example, the first three items in the present auction are all Augusta National Green Jackets.   The present auction has 32 items listed under the category of "Masters Tournament," and 19 items listed under the category of "Augusta National Golf Club."   No other golf tournament or course is even listed as a "category" in the auction.   Additionally, Defendant has previously posted auctions for hundreds of items pertaining to Augusta National and the Masters Tournament, such as awards, badges, signs, pairing sheets, photographs, etc.

53.     Defendant has purchased, sold and consigned items for persons who reside in the State of Georgia on a continuous and systematic basis, with a specific focus on items relating to the Masters Tournament and Augusta National Golf Club.

54.     Defendant has substantial contacts with the State of Georgia, and its owners have visited the state for business purposes on numerous occasions.

55.     Defendant has sold other items referencing or relating to ANI, which ANI contends were either stolen from ANI or are not authentic.

56.     Defendant is familiar with the rules, policies, customs and practices of ANI in preserving the right to possession of all Green Jackets.

57.     Defendant knew or should have known that ANI is the sole entity with the right to possession of the Green Jackets listed for auction on its website.

58.     A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.

59.     The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies. O.C.G.A. § 51-10-1

60.     Despite its knowledge of ANI's right to possession and claim to title of the Green Jackets, Defendant did not notify ANI of its possession of, or intent to sell, the Green Jackets. Instead, Defendant has attempted to sell ANI's property for profit.

61.     Any delay in the enforcement of the injunction requested herein may result in the loss of the ability to recover the stolen ANI property.

62.     Defendant has specifically advertised that the Nelson Green Jacket … "has resided in an overseas collection for years. At the conclusion of this auction, perhaps it will finally find its way home."

63.     Because of the history with Defendant and potential to lose the opportunity to recover the stolen ANI artifacts, ANI has not made a demand on Defendant.

64.     ANI, however, will make a separate demand in coordination with the service of this Complaint.  The Complaint itself, however, constitutes a sufficient demand under applicable law.

**COUNT I**
**DECLARATORY RELIEF**

65.     The foregoing allegations of Paragraphs 13 through 64 are incorporated herein by reference as if fully restated.

66.     In a case of actual controversy within its jurisdiction, any court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

67.     An actual controversy exists between the Parties in this case with respect to the title to the Green Jackets and ANI silverware, which are refenced and described in Exhibit "A" attached hereto (collectively the "Property").

68.     It is necessary and proper that the rights and status among the parties hereto be declared, including with respect to the Parties' interests in the Property.

69.     ANI seeks a declaration of rights, including a declaration that its right to possession of the Property is valid, enforceable, and superior to any claim of Defendant and/or its consignors.

70.     The Property at issue is not for sale or for release into commerce, and hence there is no monetary remedy that can restore the right to possession to ANI other than a declaration of its rights to the Property and the return of the Property to ANI.

71.     There is no alternative adequate remedy at law to restore the parties to the *status quo ante*.

## COUNT II
## TROVER/RETURN OF PROPERTY

72.    The allegations of Paragraphs 12 through 62 are incorporated herein by reference as if fully restated.

73.    The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies. O.C.G.A. § 51-10-1

74.    Georgia law provides as follows:

"The true owner of personal property, which has been stolen from him, may maintain an action in trover against one who purchases the property from another and pays to that person the purchase-price, although the defendant has no knowledge that the property has been stolen and in good faith believes that the person selling the property to him had the right to dispose of it; and the subsequent sale of the property by the defendant to a third person, before the acquisition of any knowledge that it was stolen property, constitutes a conversion."

*Briscoe v. Pool*, 50 Ga. App. 147, 147, 177 S.E. 346, 346 (1934) (citations omitted).

75.    Based on the verified factual allegations of this Complaint, ANI, as the rightful owner and possessor of the Property, is entitled to possession of same.

76.    There are no lienholders having any possessory claim to the Property.

## COUNT III
## TRADEMARK INFRINGEMENT/FALSE DESIGNATION OF ORIGIN

77.    ANI recently became aware that Defendant is advertising the auction of a belt buckle, as shown below, described as a "One of a Kind Augusta National Golf Club Sterling Silver and 14k Gold Belt Buckle."



78.    The full description of the gold belt buckle on the Defendant's website is as follows:

> This belt buckle, depicting the Augusta National Golf Club logo, is solid sterling silver and 14k gold. It is a hand made work of art and is the artist's proof. It will fit a 1 1/4 inch belt. The buckle measures 2 3/4" wide and is 2 inches tall in the middle.  This was made for sale to ANGC members only but was not completed in time to go into production for 2017. It is the only one in existence. [sic] and is marked AP 1/1. This is a heavy piece. We sold a similar but square ANGC buckle in our Spring auction for $4,284

79.    The belt buckle was not sold by ANI, and is not an authorized production of ANI.

80.    ANI owns numerous federal trademark registrations pertaining to the names "Augusta," and "Augusta National," and "Augusta National Golf Club", including the following trademarks:  U.S. Reg. Serial Nos.  85978028, 85204614, 75979778, 75172434; *see also Augusta Nat'l v. Sir Christopher Hatton, Inc.,* Civil Action No. 1-96-CV-1501-CAM, 1996 U.S. Dist. LEXIS 21707, at *3 (N.D. Ga. Dec. 1996) (recognizing and enforcing the foregoing trademark rights)

81.    ANI owns numerous federal trademark registrations pertaining to the MAP and FLAG logo used by ANI, including the following non-exhaustive list of trademarks.

| U.S. Reg. Serial Nos. | |
|---|---|
| 86279796 |  |
| 77893741 |  |
| 77892991 |  |
| 77892925 |  |
| 77888356 |  |

82.     The MAP and FLAG logo, and the terms "Augusta" and "Augusta National" (the "Marks"), are strongly associated with ANI, particularly in the golfing industry.

83.     The Marks are famous trademarks, they are inherently distinctive and they have acquired distinctiveness.

84.    All of the Marks have been extensively used, and ANI has expended considerable effort and expense in promoting them in connection with numerous products and services relating to the sport of golf in Georgia, throughout the United States, and throughout the world.

85.    Through ANI's long and extensive use and promotion of the Marks, they have become strongly identified by the consuming public with ANI.  Accordingly, ANI enjoys significant goodwill, as well as strong and enforceable rights in the Marks.  *Cf. Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.,* No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *4 (S.D. Ga. 1976) ("Whenever the terms 'The Masters' or 'The Masters Tournament,' or "The Masters Golf Tournament" are used, they have come to be understood by the cognoscenti as well as the ignoranti of the game of golf as referring to the plaintiff's annual tournament.)

86.    Defendant's use of the Marks in connection with its sale of a belt buckle is intended to suggest a connection to ANI. Specifically, the buckle is described as a "one of a kind Augusta National Golf Club" belt buckle.

87.    The belt buckle is listed under the category "Augusta National Golf Club."

88.    In fact, the belt buckle is not an "Augusta National" item.  It was not approved by, licensed by or developed on behalf of the Augusta National.  No one has obtained a license from ANI to create or sell this belt buckle with ANI's trademarked MAP & FLAG logo, and ANI does not approve of its sale on the Defendant's website.

89.    ANI has not licensed or approved Defendant's use of its trademarked terms "Augusta" or "Augusta National" in connection with the sale of the belt buckle.

90.    The use of the words "Augusta National" as well as the use of ANI's MAP and FLAG logo are clear trademark infringements and suggest that ANI somehow endorses or approves the sale of the belt buckle, which it does not.

91.    Defendant's marketing efforts are clearly intended to draw upon the valuable reference to the Augusta National Golf Club and the extensive secondary meaning associated with ANI's Marks, and ability of consumers searching those trademark names to land on the offending website.

92.    Defendant's own description indicates that the belt buckle is an "artist's proof" that was "not completed in time to go into production."  The belt buckle is clearly a counterfeit item containing an unauthorized image of the ANI's trademarked logo.

93.    Pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1),

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

94.    Similarly, 15 U.S.C. § 1114(1) provides:

> (1) Any person who shall, without consent of the registrant--(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant . . ..

95.    Defendant has used and is using ANI's Marks in commerce without its consent.

96.    Defendant's unauthorized use of ANI's Mark is likely to deceive, cause confusion, or result in mistake by consumers who believe that the belt buckle is somehow

associated with ANI. *Cf. Augusta Nat., Inc.,* No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *10-12.

97.     As a direct and proximate result of Defendant's conduct, ANI has suffered damages in an amount to be proved at trial.  In addition, ANI is entitled to treble damages, punitive damages and its costs and attorneys' fees.  Defendant's actions are willful, wanton, and accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

98.     ANI is being irreparably harmed by Defendant's unlawful actions, and ANI is entitled to an injunction prohibiting Defendant from using the Marks. ANI has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue. *Cf. Augusta Nat., Inc.,* No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *5-6.

99.     The public interest is served by preventing consumer confusion in the marketplace of items connected to ANI.

**COUNT IV**
**FALSE ADVERTISING**
**(Lanham Act, 15 U.S.C. § 1125(a))**

100.     Defendant's marketing and advertising of stolen items from ANI contains numerous misleading statements about ANI and the products for sale in Defendant's auction.

101.     Specifically, the Defendant's website advertisements contain the following false statements:

    a.     "Even casual golf fans know the legend: green jackets are not allowed to leave the hallowed grounds of Augusta National Golf Club. The actual truth – that this restriction is only a very recent creation …"

b. "It should be noted that the dearth of Masters Champion green jackets in the collector market is surprisingly not a result of Augusta National owning them. Quite the opposite – most early green jackets were discarded or destroyed in an era when they were merely seen as a symbolic garment, not a significant piece of golf history."

c. "A review of Augusta National's internal records reveals that they do not own a single jacket that was produced prior to 1967. That's right, ANGC does not own one green jacket (from a member or Champion) from the first 3 decades of the club's existence."

d. "We are almost certain that this 1966 Byron Nelson green jacket is the earliest (and, therefore, most significant in collecting appeal) Byron Nelson green jacket in existence."

102.    The foregoing statements, and others, are published on the Defendant's website and used as commercial advertisement or promotion for the Defendant's advertised products.

103.    The false statements are purported to be based on "[a] review of Augusta National's internal records," which is an added statement to lend credibility to the false representations.  The false statements therefore deceive or are likely to deceive customers in a material way.

104.    The statements are intended and designed to harm ANI and enhance the reputation and image of the products advertised by the Defendant by implying that the products are more rare and valuable that they would otherwise be viewed if the true facts were published.

105.    The statements are also intended to falsely and improperly bolster Defendant's reputation by implying that it has an ability to review private, internal records of ANI and to obtain items which ANI cannot.

106.    Defendant's statements are published in interstate commerce.

107.    Defendant's false statements have caused and are likely to cause competitive or commercial injury to ANI.

108.    ANI is being irreparably harmed by Defendant's unlawful actions, and ANI is entitled to an injunction prohibiting Defendant from making false statements about ANI and about the products advertised on the Defendant's website. ANI has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

## COUNT V
## INJUNCTION

109.    Defendant's false statements, use of ANI's trademarks, and sale of ANI's property have caused and are likely to cause competitive or commercial injury to ANI.

110.    ANI is being irreparably harmed by Defendant's unlawful actions, and ANI is entitled to an injunction prohibiting Defendant from making false statements about ANI, using ANI's trademarks, and selling ANI's property.

111.    ANI has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

112.    If the auctions of these items are permitted to continue then ANI would not have an adequate remedy at law.

113.   Undersigned counsel certifies that contemporaneously with the filing of this complaint he has provided notice of this filing to the owners of the Defendant and to their attorney via email and overnight correspondence.

WHEREFORE, ANI prays for judgment against Defendant as follows:

A.   That prior to August 19, 2017, with or without a hearing as the Court may determine in its discretion, Defendant, and all of Defendant's agents, servants, employees, and attorneys, and all other persons in active concert or participation with it who receive actual notice of the injunction, be temporarily, preliminarily, and permanently enjoined from, without permission from ANI:

(1)   using ANI's Marks, any colorable imitations thereof, or any marks confusingly similar thereto;

(2)   transferring to anyone other than ANI the Property advertised on the Defendant's website, including the Green Jackets and ANI Silverware, and the belt buckle; and

(3)   otherwise deceptively or unfairly competing with ANI.

B.   That Defendant be ordered to transfer and deposit with the Court for review and inspection the Green Jackets, ANI Silverware, and belt buckle.

C.   That possession of the Green Jackets and ANI Silverware be awarded to ANI, and that the belt buckle be destroyed.

D.   That ANI be awarded damages in an amount to be determined at trial based on Defendant's:

(1)   dilution of ANI's Marks;

(2)   infringement of ANI's Marks; and

(3)    false designations of origin, descriptions, and representations.

E.    That ANI be awarded damages and restitution, in an amount to be determined at trial, under 15 U.S.C. §1117(a), for the total profits received by Defendant from, and any damages sustained by ANI, as a result of Defendant's actions.

F.    That ANI be awarded under 15 U.S.C. §1117(a) enhanced damages, up to three times the amount found as actual damages for Defendant's trademark infringement and false designations of origin, descriptions and representations, in an amount to be determined at trial.

G.    That ANI be awarded punitive damages for Defendant's oppressive, fraudulent, and malicious acts of unfair competition.

H.    That Defendant be ordered to deliver to ANI for destruction all labels, signs, prints, packages, wrappers, receptacles, advertising materials, or products that bear marks confusingly similar to ANI's Marks, or that result in any unfair competition by Defendant against ANI.

I.    That Defendant be ordered to make a written report within a reasonable period, to be filed with the Court, detailing the manner of Defendant's compliance with the requested injunctive and mandatory relief above.

J.    That ANI be awarded its reasonable attorneys' fees and costs of suit under 15 U.S.C. §1117(a); and that ANI be awarded such other relief as the Court may deem just and proper.

Respectfully submitted, this 11th day of August, 2017.


/s/ *Christopher A. Cosper*
Christopher A. Cosper

Georgia Bar No. 142020
Mitchell B. Snyder
Georgia Bar No. 382138
HULL BARRETT PC
801 Broad Street, Suite 700
Augusta, Georgia 30901
(t) 706/722-4481
(f) 706.722.9779
(e) ccosper@hullbarrett.com


***Counsel for Plaintiff***
***Augusta National, Inc***.

STATE OF GEORGIA            )
                           )        **VERIFICATION**
COUNTY OF RICHMOND  )


The undersigned is the Senior Director of Club and Hospitality Operations of Augusta National Inc., and in that capacity has knowledge and information of the matters alleged in the Complaint.   The undersigned hereby verifies that the factual allegations in the preceding Complaint are true and accurate to the best of his information and belief.

This 11th day of August, 2017.


Sworn to and subscribed before me                )
this 11th day of August, 2017.                          )
                                                                  )        Jim James
_Ellen B. Carter_                                          )
Notary Public, Richmond County,                   )
Georgia.                                                          )
                                                                  )
_11/01/2020_                                             )
My Commission Expires                                )