**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| AUGUSTA NATIONAL, INC., | |
| Plaintiff, | |
| v. | Case No.: 1:17-CV-00096-JRH-BKE |
| GREEN JACKET AUCTIONS, INC., | |
| Defendant. | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Green Jacket Auctions, Inc. ("Defendant") files this Response in Opposition to Plaintiff's Motion and Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Motion") and states as follows[1]:

**I.    Introduction**

Defendant is a well-respected auctioneer of rare golf memorabilia.  Since 2006, the company has auctioned millions of dollars of Augusta National memorabilia, including several green jackets.  Defendant is an expert in the industry whose business and license lives and dies on its reputation.

Plaintiff's Motion accuses Defendant of trafficking in stolen Augusta National memorabilia without providing any admissible evidence to support its claim.  Its entire Motion is based on a verification that is purportedly "true and accurate to the best of [the declarant's] information and belief."  There are no documents corroborating the conclusory statements, there

---

[1] This Response Brief represents a special appearance by Defendant.  In submitting this response Brief, Defendant does not consent to the jurisdiction of this Court and does not waive and specifically reserves all affirmative defenses available under the Federal Rules of Civil Procedure and any other applicable law, including, but not limited to, any defenses to insufficient process or insufficient service of process and all available defenses set forth in Rules 8(c) and 12(b) of the Federal Rules of Civil Procedure.

are no affidavits, there are no allegations based upon personal knowledge, and there are numerous allegations that constitute impermissible hearsay. There is no credible evidence that Plaintiff has title to the auction items at issue or that it retains a possessory interest in such items. Plaintiff has not met the heavy burden required to justify the emergency relief sought in its Motion.

Contrary to Plaintiff's unsupported and conclusory statements, Defendant will suffer irreversible harm if Plaintiff's request for a temporary restraining order is granted. Removing these items from auction will have a substantial impact on Defendant's ability to auction similar items in the future and will substantially diminish the value of the items currently up for auction. Defendant respectfully requests that the Court deny the extraordinary relief requested by Plaintiff on this temporary restraining order, set a briefing schedule and hearing date for Plaintiff's motion for a preliminary injunction and allow the parties to engage in limited expedited discovery prior to the preliminary injunction hearing.

## II.     Factual Background

### A.     Defendant's History and the Parties' Prior Dealings

Defendant is an auctioneer of golf memorabilia and highly regarded in the industry. (Aff. of Ryan Carey, ¶ 5.) (hereinafter "Carey Aff.")  It began auctioning Augusta National Golf Club ("Club") and Masters Tournament ("Masters") memorabilia and related items in 2006, successfully selling over $2,000,000 over the course of eleven years with respect to Club and Masters related items. (Id., ¶ 6.)  Typically, Defendant hosts one auction with several hundred lots once every four to five months. (Id., ¶ 7.)  It takes approximately three to four months to prepare for an auction. (Id., ¶ 8.)

In 2013, Defendant successfully auctioned Horton Smith's Masters Champion Green Jacket for $682,229.45 ("Horton Smith Green Jacket"), a world record for golf memorabilia. (Id., ¶ 13.)  The Horton Smith Green Jacket was awarded to Mr. Smith several years after the 1934 inaugural competition which he won.  (Id., ¶ 14.)  The consigner of the Horton Smith Green Jacket contracted with Defendant to host and auction the jacket in 2013.  (Id., ¶ 15; Aff. of Michael James Lackovic, ¶ 2 (hereinafter "Lackovic Aff."))  While the Horton Smith Green Jacket auction was live, the consigner received numerous calls from an Augusta National, Inc. representative demanding the removal of the jacket from the auction and encouraging the consigner to breach his contract with Defendant.  (Lackovic Aff., ¶ 6; Carey Aff., ¶ 16.)  Like the Horton Smith Green Jacket sale, Plaintiff has been aware of prior sales of the green jackets on Defendant's website and has never sought court intervention to prohibit the sale.  (Id., ¶ 17.)

Defendant has a 2005 Inventory ("2005 Inventory") of the green jackets in Plaintiff's possession.  (Id., ¶ 22, Ex. A.)  The 2005 Inventory was provided to Defendant by Plaintiff's former employee who either e-mailed or e-faxed the 2005 Inventory to Defendant, in either 2005 or 2006.  (Id., ¶ 23.)  When a consignor approaches Defendant to list a green jacket, member or champion, Defendant reviews the 2005 Inventory.  (Id., ¶ 24.)  The 2005 Inventory includes information regarding the manufacturer's tag from the inside of the jacket (including manufacture date and serial number), the ordering information, and includes a "Charged Date" column describing if a member paid for his/her jacket or if a Masters Champion paid for his new green jacket. (Id., ¶ 25.)  Defendant has consulted this list in auctioning approximately fifteen green jackets. (Id., ¶ 26.)  A review of the 2005 Inventory reveals that Plaintiff did not own a single green jacket that was produced prior to 1967. (Id., ¶ 27.)

Defendant has no interest in auctioning stolen merchandise and has gone to great lengths to authenticate merchandise prior to listing an item on its website. (Id., ¶ 10.) Defendant's success depends upon its credibility and it can only be as successful as its last auction. (Id., ¶ 11.) Defendant's target clients are sophisticated, high worth individuals who expect Defendant to only conduct auctions featuring valid, authentic items. (Id., ¶ 12.)

Plaintiff has exhibited a pattern of behavior of shooting first and asking later. In the past, Plaintiff has called and sent threatening, unsubstantiated, and false letters to Defendant demanding that it remove certain items from auction based upon allegations of trademark infringement, theft, or fraud. (Id., ¶ 28.) For example, in 2015, Plaintiff demanded that Defendant withdraw from any further actions in auctioning, marketing, or selling the replica Masters Tournament Trophy. (Id., ¶ 29, Ex. B.) In 2016, Plaintiff sent a demand to Defendant regarding the auction of a certain Augusta National Golf Club Magnolia Lane Entrance Sign. (Id., ¶ 30, Ex. C.) Plaintiff stated that the Entrance Sign was not authentic, but, if it was authentic, then it was Plaintiff's property. (Id., ¶ 31.) After each demand, Defendant successfully auctioned the items as Plaintiff was unable to substantiate its initial claims. (Id., ¶ 32.)

Defendant's co-founders, Ryan Carey and Robert Zafian, stared in a reality television series called Golf Treasures in 2014 that focused on its business and the consignment of golf memorabilia. (Id., ¶ 20.) During this widely publicized series, one of Defendant's founders can be seen trying on a green jacket outside of Plaintiff's property. (Id., ¶ 21.)

Plaintiff has not contacted or attempted to resolve the dispute related to the Nelson Green Jacket, the Butler Green Jacket, the King Green Jacket, or the Silverware that is the subject of the

above referenced lawsuit.  (Id., ¶ 33.)  It did so despite knowing that Defendant has a history and pattern of conduct in responding to demand letters in good faith.  (Id.)

### B.    The Auction Items

With regard to Lot 1, the "Nelson Green Jacket" is owned by a foreign individual and is in his possession in England. (Id., ¶ 34.)  The Nelson Green Jacket has been in private collections for many years and is not listed on the 2005 Inventory.  (Id.)   With regard to Lot 3, the "Butler Green Jacket" is being consigned by an international investor in Japan.  (Id., ¶ 36.)

Lot 2, the "King Green Jacket",[2] has been in the possession, custody, and control of the great-grandson of a former Augusta National Golf Club member, George Ellis King.  (See Aff. of William Korst King, Jr. ¶¶ 2-5.)  The King Green Jacket has been in the family's possession since the 1940's and resided for a long time in the great-grandson's closet. (Id., ¶¶ 5-6.) Approximately twenty years ago, the great-grandson spoke with Plaintiff's in-house historian, Barbara Spencer, to inform Plaintiff of his possession of the King Green Jacket. (Id., ¶ 7.) During the telephone call Ms. Spencer confirmed his great-grandfather's membership to the Augusta National Golf Club.  (Id., ¶ 8.)  Ms. Spencer did not demand the King Green Jacket back nor did she reference a "policy, custom or rule" that all green jackets must be stored at Augusta National Golf Club or on Plaintiff's property.  (Id., ¶ 9.)  In fact, Ms. Spencer ended the telephone call by requesting that the great-grandson contact the Club before trying to sell the jacket in the future.  (Id., ¶ 10.)    Ms. Spencer did not inform the great-grandson that he was prohibited from selling the King Green Jacket.  (Id., ¶ 11.)  In the Spring of 2017, as a courtesy, the great-grandson called Ms. Spencer's successor and left a long, detailed message relaying his

---

[2] The Nelson Green Jacket, Butler Green Jacket, and King Green Jacket shall be referred to as the "Green Jackets," unless specifically identified otherwise.  Where the term green jacket is not capitalized, such term shall generally refer to any green jacket ever produced or made for any member or Master's champion.  The Green Jackets and the Silverware shall be collectively referred to as the "Auction Items."

intentions to sell the King Green Jacket, provided a phone number, and requested a return call. However, he received no return phone call from any individual at the Club or Plaintiff. (Id., ¶ 12.) The great-grandson provided the King Green Jacket to Defendant to auction the item. (Id., ¶ 13.)

With regard to the Silverware,[3] the consigner works for a company in the field services industry which enters into contracts with various banks to clean foreclosed, bank owned properties. (Carey Aff., ¶ 38.) The consigner removes personal property which is still in the foreclosed home and places the items on the front lawn to be picked up by the former owner or picked over by third parties. (Id.) After a set amount of time, the consigner returns to the foreclosed property, takes possession of any remaining abandoned items he would like, and hauls away the remainder to the dump. (Id.) The consigner took possession of the abandoned Silverware after cleaning out a foreclosed property. (Id.)

Based upon the arguments set forth herein and the Affidavit and Declaration attached hereto, Plaintiff fails to state a claim for a temporary restraining order which would materially and adversely affect Defendant's business and its reputation.

## III.    Legal Standard

In order to grant a temporary restraining order ("TRO") or preliminary injunction under Rule 65, Plaintiff, as the movant, must establish: (1) substantial likelihood of success on the merits of the underlying case; (2) irreparable harm will be suffered by movant in the absence of a TRO or an injunction; (3) the threatened harm suffered by movant in the absence of a TRO or an injunction would exceed the harm suffered by the defendant if the TRO or injunction issued; and

---

[3] Defendant hereby agrees to remove the belt buckle from auction. (Carey Aff. ¶ 37.) Therefore, all claims and allegations pertaining to the belt buckle are hereby moot. Defendant cannot consent to providing the belt buckle to Plaintiff, but to the extent the Court orders Defendant to turn over possession of the belt buckle it would comply with any order of this Court.

(4) the TRO or injunction would not disserve the public interest. <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1223, 1225-26 (11th Cir. 2005); <u>Bonner v. Law Companies Grp., Inc.</u>, 964 F. Supp. 341, 342-43 (N.D. Ga. 1997). <u>See also</u> <u>Morgan Stanley DW, Inc. v. Frisby</u>, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001) (noting that the same standard applies to a request for a temporary restraining order as to a request for preliminary injunction).

Plaintiff, as the party seeking the TRO and preliminary injunction here, has the burden of establishing the need for such an extraordinary remedy in these circumstances. <u>Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.</u>, 370 F. Supp. 2d 1333, 1336 (N.D. Ga. 2005) ("[A] TRO, like a preliminary injunction, is an extraordinary remedy that is not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements"); <u>Bonner</u>, 964 F. Supp. at 343 ("Because of the extraordinary nature of the relief afforded by a temporary restraining order, the burden placed upon plaintiffs seeking such relief is quite onerous"); <u>Morgan Stanley DW, Inc.</u>, 163 F. Supp. at 1374 ("A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites).

## IV.    Legal Argument and Analysis

### A.    Conclusory Statements Unsupported by Fact Cannot Form the Basis for a TRO or a Preliminary Injunction

Plaintiff's allegations are based solely on the information and belief of its Senior Director of Club and Hospitality Operations of Augusta National, Inc., who has not been shown to have first-hand knowledge of any of the specific incidents charged in the Complaint. Plaintiff failed to file a single affidavit of an individual with personal knowledge of the facts at issue. Plaintiff's purported "verification" is based solely on hearsay and conjecture.

112621481.1

Importantly, Plaintiff cannot seek to obtain the extraordinary relief sought in its Complaint when it relies on inadmissible evidence that is not properly verified. In Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc., 446 F.2d 353 (5th Cir. 1971), the Fifth Circuit reversed the injunction imposed by the district court where the complaint was not verified with those who had first-hand knowledge. Id. at 357. The moving party in Marshall Durbin filed a lengthy complaint which was "verified by the affidavit of an officer or managerial employee of each plaintiff. Each verification was the same, stating only that the averments of the complaint were true and correct according to the affiant's knowledge, information and belief." Id. at 354. The complaint itself was similarly deficient in that it failed to adequately identify the parties involved, failed to provide the locations of the alleged harassment and acts of violence, and was largely a "massive compilation of hearsay." Id. at 357. In short, there was a "dearth of identifying information in the complaint." Id. In reversing the injunction imposed by the district court, the Fifth Circuit stated that "district courts have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on **information** and **belief**." Id. (emphasis added).

Moreover, in determining the sufficiency of a motion for TRO and/or preliminary injunction, the Eleventh Circuit and its courts will dismiss a complaint where the allegations "upon information and belief" are insufficient to withstand a Twombly/Iqbal scrutiny.[4] See Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to take as true conclusory

---

[4] "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relieve above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. A pleading cannot simply be a "formulaic recitation of the element of the cause of action." Id. at 555. Nor can the complaint tender "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

allegations in an injunction for the stay of execution which were based "upon information and belief"); Metellus v. Bank of America, N.A., Case No. 5:15-CV-183-LJA, 2016 WL 7985330, at *4 (M.D. Ga. March 28, 2016) (dismissing a *pro se* TRO/Preliminary Injunction complaint where the complaint made "a number of conclusory allegations upon information and belief … [which were] not supported by sufficiently-alleged facts").

An exemplary of the conclusory allegations are provided below:

> 18.     The policy, customs, and rules of the Masters Tournament and of ANI provide that the Green Jacket presented to the annual Masters champion may not be removed from ANI's grounds except during the first year following its presentation.  Thereafter, it must be stored on ANI premises for use only on the grounds and during the annual Tournament.  Thus, a champion's Green Jacket is owned by ANI with a champion having possessory rights when on the premises of ANI.

> 20.     Member Green Jackets are subject to the same rules.  They must be stored on ANI premises for use only on the grounds and during the annual Tournament.  The only difference is that a member may never remove his/her Green Jacket from the grounds.  When member Green Jackets become worn or torn, they are disposed of and/or preserved by ANI, in its sole discretion, and replaced with a new Green Jacket.  Each Green Jacket is specially marked for identification and authenticity reasons.

Paragraphs 18 and 20 of Plaintiff's "verified" Complaint are unsupported by sworn testimony; lack any identifying information as to which policy and policy year they rely upon; and fail to describe, reference, or attach the relevant policy provision, custom, or rule.  Plaintiff concludes as a matter of law that based upon these alleged policies, customs, and rules, it is thereby vested with possessory and legal ownership interest of all green Jackets.  Plaintiff also states that the Green Jackets "must be stored on ANI premises," but fails to provide any factual basis as to how they are stored, whether it is in a secure location, who has access to the premises or how it maintains chain of custody of the green jackets.  Further, Plaintiff proffers that "Each

Green Jacket is specially marked for identification and authenticity reasons." Yet, Plaintiff fails to provide any evidence supporting this allegation including how each jacket is specially marked.

Plaintiff is the sole possessor of such policies, customs, and rules and should either attach the policies or recite the relevant provisions. See Katica v. Specialized Loan Servicing, LLC, 1-15-CV-2957- ODE-WEJ, 2015 WL 10765188, *7 (N.D. Ga. Dec. 1, 2015) ("Because plaintiff states that she received the notice of foreclosure, her allegations as to its contents should not have been made on information and belief .... Plaintiff could have attached a copy of the notice."). Because the information is solely within the Plaintiff's control, it is required to proffer allegations based on fact and not information and belief. Cf. Functional Products Training, S.A. v. JITC, LLC, No. 1:12-CV-00355-WSD, 2014 WL 3749213, at * 17 (N.D. Ga. July 29, 2014). Accordingly, the allegations made in paragraphs 18 and 20 are insufficient to support Plaintiff's request for a temporary restraining order.

> 19. Gary Player famously tells the story of having mistakenly taken his Green Jacket home to South Africa after the 1961 Masters, and inadvertently failing to return the Green Jacket in 1962. After discussions with ANI that year, he was given permission to store the Green Jacket in South Africa subject to the caveat that he never wears the Green Jacket in public.

Paragraph 19 contains inadmissible hearsay and relies upon a famous story purportedly told by Gary Player. Plaintiff goes on to conclude that Gary Player had discussions with "ANI" that year, but fails to provide any corroborating evidence or even offer an affidavit supporting such claim. See Metellus, 2016 WL 7985330, at *4. Even if the statement were admissible, the statement demonstrates that Plaintiff has acquiesced to players removing their green jackets from Plaintiff's property. Plaintiff fails to aver, because it cannot, that this is the only instance where it has permitted or consented to a player or member removing a green jacket from Plaintiff's property.

22.    During a physical inventory in 2009, the 1966 Champions Green Jacket of Mr.

Byron Nelson (the "Nelson Green Jacket") was confirmed to be in existence and stored at ANI.

Specifically, ANI's inventory showed the following with respect to the Nelson Green Jacket:

    a.    Manufacturer – Hart Schaffner & Marx

    b.    Date - 1966

23.    ANI recently became aware that Defendant is advertising the auction of the very

same Nelson Green Jacket, with the Jacket to be sold at auction on August 19 at 8:00 PM EST.

It has rechecked its inventory and determined that the Nelson Green Jacket is now missing.

Paragraphs 22 and 23 are bare bones averments unsupported by personal knowledge or business records and cannot be relied upon to support a request for a temporary restraining order. See Metellus, 2016 WL 7985330, at *4.

27.    Butler reports to ANI that he has never removed his Green Jacket from the Golf

Club and has never consented for it to be sold by Defendant.

Paragraph 27 clearly relies upon inadmissible hearsay and offers no evidence, affidavit, or verification that it is a true and accurate statement. The inadmissible statement is also extremely vague as it does not specify whether Butler has had multiple jackets, whether he instructed someone else to remove one of his green jackets from Plaintiff's property, or whether he merely gifted one of his old green jackets at the club to a third-party. See Metellus, 2016 WL 7985330, at *4.

31.    George King was a member of the Augusta National Golf Club for a brief time.

As a member, he was assigned a member's Green Jacket, which should have been permanently stored at the Golf Club.

Paragraph 31 woefully falls short of any cognizable legal standard. Plaintiff fails to allege what dates George King was a member and does not allege that this was a policy in existence at the time that required the members to permanently store their green jackets on premises. Such information is presumably verifiable by a review of the Club's membership roll

and policies. Only the Plaintiff has access to such information and, accordingly, is not permitted to set forth these allegations on "information and belief." See Functional Products Training, 2014 WL 3749213, at * 17.

> 40.   ANI does not sell or gift its proprietary silverware to third parties.
>
> 41.   ANI does not release its proprietary silverware into the stream of commerce.
>
> 42.   The only manner in which a third-party may come into possession of ANI's proprietary silverware is by stealing it from the grounds of the Golf Club.

Paragraphs 40-42 are insufficient to support the extraordinary relief requested. The "verified" Complaint sets forth what appears to be Plaintiff's rules that it does not sell or gift the silverware nor does it release the silverware into the stream of commerce. This bare bones allegation has not been verified as a business policy nor has it been shown that this policy has been in place since Plaintiff's inception. Only the Plaintiff has access to such information and is not permitted to set forth these allegations on "information and belief." See Functional Products Training, 2014 WL 3749213, at * 17. Moreover, Plaintiff jumps to a legal conclusion that the only manner any party may come into possession of the silverware is through "stealing it from the grounds." Such legal conclusions are impermissible and insufficient to support the extraordinary relief sought by Plaintiff. See Metellus, 2016 WL 7985330, at *4.

> 50.   Defendant has previously purchased green jackets that were stolen from ANI, and it was forced to return those jackets to ANI upon learning that they were in fact stolen.

Paragraph 50 is particularly disturbing because it is patently false. (See Carey Aff., ¶ 40) Defendant has never knowingly purchased stolen green jackets. (Id.) Defendant has been sent green jackets to authenticate before by a consignor. (Id.) When Plaintiff alleged that the jackets were stolen, Defendant immediately contacted the consignor and returned the green jackets to consigner. (Id.) Further, Paragraph 50 is not supported by corroborating evidence. Plaintiff has

not produced evidence that it filed a police report, submitted loss property claims to its insurance provider, or otherwise treated the Auction Items as stolen. Plaintiff's attempt to discredit Defendant's reputation and goodwill with inadmissible, irrelevant, and conclusory allegations based solely upon information and belief is completely disingenuous and improper.

Plaintiff alleges "[b]ecause of the history with Defendant and potential to lose the opportunity to recover the stolen [Plaintiff] artifacts, [Plaintiff] has not made a demand on Defendant." Compl. ¶ 63. Plaintiff has a history of sending threatening, unsubstantiated, false demands. (See Carey Aff., ¶¶ 16, 28-30.) It now runs to the Court on an expedited basis seeking to strong-arm Defendant into removing the Auction Items from the website. It boldly does so on the basis of hearsay, inadmissible evidence, and information and belief, with full knowledge, understanding and recognition that it is the only party with documents that would substantiate its claims. Plaintiff's failure to provide those documents or any evidence to substantiate its claims demonstrates that this Motion was brought for an ulterior motive, namely, to bully Defendant into pulling the Auction Items.

The entire Complaint is verified only upon information and belief. This, without additional facts or assertions, is simply insufficient to support the entry of such an extraordinary remedy as injunctive relief. See Metellus, 2016 WL 7985330, at *4.

Finally, the verification attached to the Complaint is null and void. 28 U.S.C. § 1746 provides, in pertinent part:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same … such matter may, with like force and effect, be supported, evidenced, established, or proved … in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

***

> (2) if executed within the United States … "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (Date). (Signature)."

Not only has the declarant improperly attempted to verify the Complaint based upon information and belief, but he has refused to do so under penalty of perjury. Such verification is a nullity and Plaintiff has failed to fulfill the basic procedural requirements of obtaining a temporary restraining order. See SoftwareONE, Inc. v. Rende, Case No., 2013 WL 1197200 (E.D. Wis. March 25, 2013) ("[The verification provision of the Amended Complaint did] not substantially comply with the requirements of 28 U.S.C. § 1746 and, therefore, is not valid.").

As such, Plaintiff's Motion, which relies solely on an improper and inadmissible verification, should be denied in its entirety.

**B.    Plaintiff is Not Likely to Succeed on the Merits**

1.    <u>Plaintiff Cannot Succeed on the Merits of its Trover Claim and Declaratory Judgment Claim as it Cannot Establish the Elements of Each Claim</u>

In its first two counts, Plaintiff alleges that (1) it is entitled to declaratory relief from the Court declaring that it has superior title to the Auction Items, and (2) Defendant is liable for converting the Auction Items. Plaintiff cannot show a likelihood of success on either claim because it provides *no* admissible evidence demonstrating ownership of the Auction Items, let alone enough evidence to show a likelihood of its superior title to the property to justify a temporary restraining order.

To prevail on its trover claim, Plaintiff must demonstrate that Defendant exercised dominion over its personal property in a way that was inconsistent with Plaintiff's right to the property. Bo Phillips Co. v. R.L. King Properties, LLC, 336 Ga. App. 705, 707, 783 S.E.2d 445,

14

448-49 (2016). Accordingly, the first element Plaintiff must demonstrate in support of its claim is its rightful title to the property at issue, which it has failed to do. See Hooks v. Cobb Ctr. Pawn & Jewelry Brokers, Inc., 241 Ga. App. 305, 308, 527 S.E.2d 566, 569 (1999).

Under Georgia law, possession creates a rebuttable presumption of title in the possessor. Kornegay v. Thompson, 157 Ga. App. 558, 560, 278 S.E.2d 140, 142 (1981). It is undisputed that the Auction Items at issue in this litigation are not currently in Plaintiff's possession. Moreover, Plaintiff has failed to rebut this presumption with *any* admissible evidence demonstrating its ownership of the Auction Items. In support of its claim of ownership, Plaintiff offers nothing more than conclusory allegations that its "policy, customs, and rules" provide that the green jackets may not be removed from its premises, and the members and Masters champions only have possessory rights in the jackets while on its premises. (Compl. ¶¶ 18, 19.) Plaintiff fails to proffer any admissible evidence of such policies or substantiate when these policies were enacted, whether these policies were in writing, whether the members/champions were advised of such policies at the time they were given the green jackets, or whether the members/champions signed a document acknowledging these policies at the time they received their green jackets. Additionally, with respect to the silverware, it alleges nothing at all regarding how it allegedly disposes of or stores unused silverware. Without these basic facts, Plaintiff's mere conclusory allegations regarding its "policy, customs, and rules" and their effect on the instant litigation cannot justify the imposition of a temporary restraining order.[5]

---

[5] On this ground, this case is glaringly different from the United States District Court of California's opinion in Academy of Television Arts & Sciences v. Heritage Auctions, et al., Case No. CV 16-4518 PA attached as Exhibit 3 to the Complaint. In that case, the court granted a TRO to prevent the reproduction, distribution, display, promotion, sale, and advertisement of an Emmy because the plaintiff came forward with admissible evidence that each Emmy bore a notice affixed to the award stating that the award remained as plaintiff's property and explicitly stated that the award could "not be reproduced or used in any commercial manner," and the award must be returned to plaintiff "if a recipient or the recipient's heir or successor in interest proposes to sell or otherwise dispose of the Emmy." (Doc. 1-5, pp. 1-2.) Here, by contrast, Plaintiff has failed to point to single shred of admissible evidence that such a notice was affixed to or otherwise provided to the champions/members who received the green jackets.

See Duke v. Cleland, 783 F. Supp. 600, 605 (N.D. Ga. 1992), aff'd, 954 F.2d 1526 (11th Cir. 1992) ("A conclusory statement with no cited authority is hardly an argument worthy of a preliminary injunction.").

Further, Plaintiff fails to put forth any evidence that it has ever treated the green jackets or the Auction Items as stolen or missing. There is no evidence of police reports, insurance claims, or other actions one may take when trying to recover stolen goods. Accordingly, Plaintiff cannot establish a likelihood of success on the merits on its claims for declaratory relief and conversion.

### 2. Plaintiff Is Not Likely to Succeed on the Merits of its False Advertising Claims

In order to establish a likelihood of success on the merits under the Lanham Act, a Plaintiff must establish that (1) the challenged advertisements were false or misleading, (2) the advertisements deceived, or had the capacity to deceive consumers, (3) the deception had a material effect on purchasing decisions, and (4) injury as a result of the false advertising. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002); Atlanta Allergy and Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC, 685 F. Supp. 2d 1360, 1380 (N.D. Ga. 2010). "A court must analyze the message conveyed in full context … rather than examining the 'eyes, noses and mouth separately and in isolation of each other … While the court should consider context, it may not assume context." 1-800 Contacts, Inc., 299 F.3d at 1248.

Plaintiff asserts that there are four separate false statements. Those are:

> (1) Even casual golf fans know the legend:  green jackets are not allowed to leave the hallowed grounds of Augusta National Golf Club.  The actual truth – that this restriction is only a very recent creation…

(2) It should be noted that the dearth of Masters Champion green jackets in the collector market is surprisingly not a result of Augusta National owning them. Quite the opposite – most early green jackets were discarded or destroyed in an era when they were seen as a symbolic garment, not a significant piece of golf history.

(3) A review of August National's internal records reveals that they do not own a single jacket that was produced prior to 1967. That's right, ANGC does not own one green jacket (from a member or Champion) from the first 3 decades of the club's existence.

(4) We are almost certain that this 1966 Byron Nelson green jacket is the earliest (and, therefore, most significant in collecting appeal) Byron Nelson green jacket in existence.

(See Compl. ¶ 101 (a) – (d).)

(a)     *Defendant's Statements are Not False or Misleading*

In order to establish the first element of a false advertising claim, Plaintiff must establish that "the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading." 1-800 Contacts, Inc., 299 F.3d at 1247. In order to be "false" in any way cognizable under the Lanham Act, a statement must also be one of fact – that is, a "specific and measureable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Design Resources, Inc. v. Leather Industries of America, 789 F.3d 495, 502 (4th Cir. 2015).

Plaintiff's dispute and claim for false advertising is not based on the authenticity or lack of authenticity of the Green Jackets or Silverware, but is rather concerned with non-actionable statements of opinion regarding the sale of the items. Plaintiff acknowledges that the three Green Jackets and the Silverware are authentic. (See Compl. ¶ 36 ("ANI has title and the right of sole possession to the Nelson Green Jacket, the Butler Green Jacket and the King Green Jacket…") and ¶ 48 ("ANI has title and the right of sole possession to the silverware…")).

112621481.1

Expressions of opinion (as opposed to fact) are not actionable as false advertising under the Lanham Act. To qualify as a non-actionable opinion, a statement must amount to nothing more than puffery. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 160 (2d Cir. 2007); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 464 (D. N.J. 2009) ("[N]onspecific statements that do not refer to specific characteristics of a product are non-actionable puffery."). Puffery may be either (1) a general claim that is so vague that it can be understood as nothing more than an expression of opinion; or (2) an exaggerated, blustering statement that no reasonable buyer would be justified in relying on. Time Warner, 497 F.3d at 160.

The first statement at issue, "even casual golf fans know the legend; green jackets are not allowed to leave the hallowed grounds of Augusta National Golf Club. The actual truth – that this restriction is only a very recent creation…" is literally true. (See Carey Aff., ¶ 41.) Further, Plaintiff failed to offer any admissible evidence demonstrating that this statement is false or misleading.

The second statement at issue, that "most early green jackets were discarded or destroyed in an era when they were merely seen as a symbolic garment, not a significant piece of history" is one that is clearly an expression of opinion. (See Carey Aff., ¶ 42.) Symbolism and the importance of a particular item in history is a personal decision and measurement which would only bolster one's preconceived opinion of the item. See Time Warner, 497 F.3d at 160 (Puffery may be a general claim that it can be understood as nothing more than an expression of opinion). Moreover, Plaintiff failed to offer any admissible evidence demonstrating that this statement is false or misleading.

The third statement at issue, that Defendant reviewed Augusta National's internal records is a statement that is literally true. (See Carey Aff., ¶¶ 22-27.) Plaintiff has not and cannot provide any admissible evidence demonstrating that Defendant does not have in its possession internal records regarding the green jackets.

The last statement at issue, that the 1966 Byron Nelson green jacket is the earliest and most significant in the collection, is opinion. (See Carey Aff., ¶ 43.) Such a claim is not subject to a quantifiable analysis and is purely opinion and personal. Plaintiff failed to offer any admissible evidence demonstrating that this statement is false or misleading.

### (b) No Evidence of Deception

If the statements are deemed to be true, but misleading, then the Plaintiff must present evidence of deception and must provide "expert testimony or other evidence" in order to obtain a preliminary injunction. See United Ind. Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998). In support of its burden to prove actual deception, Plaintiff simply offers the following conclusory statement: "The false statements were intended to deceive the customers, and to drive up the price of the bids by making these items seem even rarer." (See Plaintiff's Motion, pg. 13.) Plaintiff offers no evidence, must less expert testimony, supporting its position that the statement deceived the sophisticated customers who are bidding on the green jackets.

### (c) The Allegedly False Statements Did Not Materially Influence the Purchasing Decision

Plaintiff "must establish materiality even when a defendant's advertisement has been found literally false." 1-800 Contacts, Inc., 299 F.3d at 1251. The statements at issue did not misrepresent an inherent quality or characteristic of the Nelson Green Jacket. The consumers who are purchasing green jackets on the Defendant's auction website are paying in the hundreds of thousands of dollars for the jackets. (See Carey Aff., ¶ 12.) They are high end consumers

who are certain to conduct their own independent research and not rely upon a ten-sentence opinion regarding the green jacket and its history in determining the jacket's worth. See Time Warner, 497 F.3d at 160 (Puffery may be a general claim that it can be understood as nothing more than an expression of opinion); Carey Aff., ¶ 43.

(d) <em>Likelihood of Injury is Obsolete and Negligible</em>

Plaintiff must lastly establish that it "has been – or is likely to be – injured as a result of the false advertising." 1-800 Contacts, Inc., 299 F.3d at 1247. Plaintiff offers no admissible evidence that is has suffered or is likely to be injured as a result of the statements. Accordingly, Plaintiff failed to establish a likelihood of success on the merits and its request for a temporary restraining order should be denied.

### C. Plaintiff Failed to Establish the Likelihood of Irreparable Harm

Plaintiff failed to carry its burden of demonstrating a clear likelihood of irreparable harm. Without any evidentiary support, Plaintiff argues that it will be irreparably harmed if the items are auctioned because it will be difficult, if not impossible, to subsequently recover the items and monetary damages will not suffice. (Plaintiff's Motion, pp. 13-15.)[6]

Plaintiff's claim of irreparable harm consists of conclusory allegations without evidentiary support, which is insufficient for the extraordinary relief it is seeking. Dongguan Prestige Sporting Products Co., Ltd v. Merits Co. Ltd, 1:14-CV-3399-AT, 2014 WL 12573534, at *1 (N.D. Ga. Oct. 23, 2014) (denying motion for temporary restraining order because "Plaintiff has failed to 'make a clear showing that it is at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury'"). The evidence demonstrates that Plaintiff was well aware of prior sales of green jackets by Defendant and failed

---

[6] Plaintiff further asserts that it will be irreparably harmed by the sale of the belt buckle in lot 85 as it contains an unauthorized reproduction of Plaintiff's intellectual property. Plaintiff's Motion at p. 15. This argument is moot and irrelevant as Defendant has removed Lot 85 from the auction. (See Carey Aff., ¶ 37.)

to seek court intervention to prohibit the sale.  (See Carey Aff., ¶¶ 13-19.)  The evidence further demonstrates that the silverware previously used at Augusta National Golf Club is consistently sold on the open market.  (Id., ¶ 39.)

Plaintiff's failure to seek judicial intervention to prohibit the prior sales of these items in the past demonstrates that it will not be irreparably harmed by the sale of the Auction Items. Pronman v. Styles, No. 12-80674-CIV, 2014 WL 5325207, at *7 (S.D. Fla. Sept. 4, 2014) (denying motion for preliminary injunction because, namely, plaintiffs were aware of defendants website in 2009 and failed to seek injunctive relief until 2014.); Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc., 188 F. Supp. 2d 1350, 1356 (S.D. Fla. 2002) ("The Court finds that this unexplained delay undercuts any sense of urgency and, therefore, Plaintiff has failed to demonstrate sufficient need for a preliminary injunction."); Tiber Labs., LLC v. Hawthorn Pharm., Inc., 527 F.Supp. 2d 1373, 1381 (N.D. Ga. 2007) ("Where the movant 'unduly delayed in bringing suit,' however, 'thereby negating the idea of irreparability,' a preliminary injunction should not issue.").  Moreover, any damages borne as a result of Defendant's sales are readily ascertainable as the Auction Items have a monetary value as evidenced by the bidding that has occurred for said items.  See O.C.G.A. § 51-10-6; Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1376 (N.D. Ga. 2001) (noting that in the context of a TRO, the presence of an adequate legal remedy eliminates the risk of irreparable harm).  Plaintiff's failure to present a "clear showing" of irreparable harm requires that its Motion be denied.  See Kate Aspen, Inc., 370 F. Supp. 2d at 1336 (N.D. Ga. 2005) ("[A] TRO, like a preliminary injunction, is an extraordinary remedy that is not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements").

**D.      Plaintiff Failed to Show that the Balance of Hardships Tips in its Favor**

Plaintiff has not met its burden of demonstrating that the balance of equities tips in its favor.  Plaintiff's argument is based entirely on the inaccurate assertion that it has title to the Green Jackets and Silverware.  Plaintiff failed to present admissible evidence demonstrating ownership to the items at issue.  Further, the irreparable injury requirement cannot be met by unsubstantiated allegations that the Auction Items may somehow disappear.  Plaintiff's showing of irreparable harm "must be neither remote nor speculative, but actual and imminent."  Faircloth v. Baden, No. 1:11-CV-86, 2011 WL 7640351, at *1 (M.D. Ga. Aug. 1, 2011) (citing Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)); Sierra Club v. Atlanta Reg'l Comm'n, 171 F. Supp. 2d 1349, 1358 (N.D. Ga. 2001) (same).

On the other hand, Defendant would suffer significant harm if Plaintiff's Motion were granted.  Defendant's reputation and goodwill among customers would suffer significantly.  (See Carey Aff., ¶ 44.)  An auctioneer is only as good as its last auction and delisting items will have substantial impact on Defendant's ability to auction similar items in the future, and the value of the Auction Items will decrease as the removal would result in lower final bids as potential buyers will fear that they will be accused of buying allegedly stolen merchandise.  (Id.)  Defendant will be further harmed because it will be unable to deliver on its commitments to auction these items and would lose significant revenue associated with these items. (Carey Aff., ¶ 45.)  The bidding on these items is expected to exceed $400,000 by the end of the auction. (Carey Aff., ¶ 46.)

Given the tenuous nature of Plaintiff's claims and the fact that the damages are readily determinable, Plaintiff has failed to demonstrate that it will suffer prejudice if its Motion is denied.  Mobility Transit Servs., LLC v. Augusta, No. CV 113-082, 2013 WL 12122573, at *3

(S.D. Ga. June 28, 2013) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal citation omitted). As Plaintiff has not met its burden of showing that the balance of hardships tips in its favor, the Motion must be denied. See Kate Aspen, Inc., 370 F. Supp. 2d at 1336 (N.D. Ga. 2005) ("[A] TRO, like a preliminary injunction, is an extraordinary remedy that is not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements").

### E.  Plaintiff Failed to Show that the Extraordinary Remedy of Emergency Injunctive Relief is in the Public Interest

Plaintiff has not met its burden of establishing that a temporary restraining order is in the public interest. Plaintiff's argument that the public interest will be served depends, once again, on the inaccurate assertion that Plaintiff is likely to succeed on the merits of its claims. Plaintiff failed to present admissible evidence demonstrating title to the Auction Items or that Defendant engaged in false advertising. Further, there is no credible evidence supporting Plaintiff's claim that there is confusion in the marketplace with respect to the Auction Items. However, there is a strong public interest in upholding Defendant's contracts with the owners of the Auction Items and allowing the sale of golf memorabilia to continue. See, e.g., Great Am. Ins. Co. v. Fountain Eng'g, Inc, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *5 (S.D. Fla. Oct. 22, 2015) (stating that "the public interest favors the enforcement of contracts").

On the contrary, Plaintiff's request for broad injunctive relief would *disserve* the public interest because it is overbroad and seeks to restrict Defendant's lawful business. Plaintiff purports to limit this dispute to the sale of five Auction Items. In reality, Plaintiff's request goes far beyond these specific items, and seeks injunctive relief enjoining Defendant from selling any

memorabilia associated with Augusta National and the Masters' Tournament. "[A] preliminary injunction must be 'narrowly tailored to fit specific legal violations, because the district court should not impose unnecessary burdens on lawful activity.'" <u>Int'l Sch. Servs., Inc. v. AAUG Ins. Co.</u>, No. 10-62115-CIV, 2010 WL 4810847, at *7 (S.D. Fla. Nov. 19, 2010) (quoting <u>Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.</u>, 304 F.3d 1167, 1178 (11th Cir. 2002)). And Federal Rule of Civil Procedure 65 "requires requests for injunctions to be *specific*." <u>Mckissick v. Owens</u>, No. CV 312-065, 2012 WL 4321268, at *2 (S.D. Ga. Aug. 23, 2012) (citing Fed. R. Civ. P. 65(d)), <u>report and recommendation adopted,</u> No. CV 312-065, 2012 WL 4321169 (S.D. Ga. Sept. 18, 2012). Plaintiff's sweeping requests fly in the face of these stated restrictions.

For example, Plaintiff seeks an order from the Court, enjoining Defendant from "using ANI's Marks, any colorable imitations thereof, or any marks confusing similar thereto." (Compl., p. 19.) Plaintiff is not permitted to seek an injunction covering all uses of ANI's Marks as many uses, namely, a valid descriptor for the Auction Items, is a lawful fair use. <u>See</u> <u>Corbitt Mfg. Co. v. GSO Am., Inc.</u>, 197 F. Supp. 2d 1368, 1377-78 (S.D. Ga. 2002) (denying preliminary injunction when Defendant's use of mark was descriptive and constituted fair use). "It is well settled that a court has no authority to enjoin lawful conduct." <u>Sierra Club v. Energy Future Holdings Corp.</u>, No. W-12-CV-108, 2014 WL 2153913, at *20 (W.D. Tex. Mar. 28, 2014) (citing <u>Lauf v. E.G. Shinner & Co.</u>, 303 U.S. 323, 328 (1938) (a federal district court may not "enjoin acts declared ... to be lawful"); <u>Senn v. Tile Layers Protective Union, Local No. 5</u>, 301 U.S. 468, 483 (1937) (injunctive relief will not issue "against the lawful conduct of another"); <u>Sierra Club v. Peterson</u>, 228 F.3d 559, 571 (5th Cir. 2000) (a district court may not

enter an injunction that fails "to distinguish between legal and illegal future [conduct]")). Thus, Plaintiff's requested relief is overbroad because it seeks to enjoin Defendant's lawful conduct.

Based on the foregoing, Plaintiff has not shown that the public interest would be served by enjoining this conduct. Consequently, the Motion must be denied. See Kate Aspen, Inc., 370 F. Supp. 2d at 1336 (N.D. Ga. 2005) ("[A] TRO, like a preliminary injunction, is an extraordinary remedy that is not to be granted unless the movant clearly establishes the burden of persuasion as to all four elements").

> **F.** **If the Court Grants the Temporary Restraining Order, Plaintiff Should be Required to Post a Bond in the Amount of $400,000.00.**

If the Court elects to impose the requested temporary restraining order notwithstanding all of the factual errors highlighted above, Plaintiff should be required to post a bond in the amount of $400,000.00. Federal Rule of Civil Procedure 65(c) allows for the issuance of a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The requested temporary restraining order is sweeping in nature, seeking to enjoin Defendant from selling all of the Auction Items which, absent this lawsuit, were likely to generate collectively more than $400,000.00 at auction. The issuance of the temporary restraining order will leave Defendant unable to deliver on its commitments to its clients, risking the potential immediate termination of those contracts, which would have long lasting effects. Defendant's reputation and goodwill will also be substantially harmed by the issuance of a temporary restraining order. The requested temporary restraining order, if entered, therefore should be accompanied by at least a $400,000.00 bond.

## V.     Conclusion

For the reasons stated above, Defendant respectfully requests an order denying Plaintiff's Motion in its entirety.

Respectfully submitted this 17th day of August, 2017.

**CARLTON FIELDS JORDEN BURT, P.A.**

By: */s/ Gail Podolsky*
Gail E. Podolsky
Georgia Bar No. 142021
Christopher B. Freeman
Georgia Bar No. 140867
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
404-815-3400
404-815-3415 (fax)
gpodolsky@carltonfields.com
cfreeman@carltonfields.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2017, I electronically filed the foregoing with the Clerk by using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

*/s/ Gail Podolsky*
Gail E. Podolsky
Georgia Bar No. 142021

112621481.1