IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AUGUSTA NATIONAL, INC.,          *
                                 *
        Plaintiff,               *
                                 *
        v.                       *
                                 *        CV 117-096
GREEN JACKET AUCTIONS, INC.,     *
                                 *
        Defendant.               *
                                 *

---

**O R D E R**

---

Before the Court are three motions: (1) Defendant's motion
to dismiss for improper venue (doc. 37); (2) Defendant's
alternative motion to transfer to the District of New Jersey
(doc. 37); and (3) Plaintiff's motion to seal (doc. 19).  The
Court **DENIES** Defendant's motion to dismiss and motion to
transfer.  It **GRANTS IN PART** and **DENIES IN PART** Plaintiff's
motion to seal.

## I. BACKGROUND

Plaintiff owns and operates the Augusta National Golf Club
("Augusta National") and the Masters Tournament (the "Masters").
Defendant is an online auctioneer of golf memorabilia that has a
history of selling items related to Augusta National and the
Masters.  On August 2, 2017, Defendant listed for auction on its

website the following pieces of memorabilia related to Augusta National and the Masters (collectively, the "Items"): (1) the "Butler Jacket," the "Nelson Jacket," and the "King Jacket" (collectively, the "Jackets"); (2) silverware bearing Plaintiff's trademarked map and flag logo (the "Silverware"); and a belt buckle also bearing Plaintiff's trademarked map and flag logo (the "Buckle").

On August 14, 2017, Plaintiff filed suit in this Court asserting various causes of action. (Doc. 1.) First, it requested declaratory relief with respect to the issue of title to the Jackets and the Silverware. (Id. at 10.) Second, it asserted a claim for trover with respect to the Jackets and the Silverware and demanded their return. (Id. at 11.) Third, it asserted trademark infringement related to the auction of the Buckle. (Id.) Fourth, it asserted a false advertising claim related to Defendant's marketing of the Items. (Id. at 16.) Fifth, it sought "an injunction prohibiting Defendant from making false statements about [Plaintiff], using [Plaintiff's] trademarks, and selling [Plaintiff's] property." (Id. at 18.)

Contemporaneously with its complaint, Plaintiff also filed a motion for preliminary injunction to prohibit Defendant from auctioning the Items. (Doc. 4.) On August 17, 2017, this Court held a hearing on the motion and granted the requested relief. (Doc. 16.) It also heard an oral motion by Plaintiff to seal

certain documents entered into evidence by Defendant. The Court granted Plaintiff's oral motion, but ordered Plaintiff to file a written motion for its consideration. (Doc. 15.)

On September 11, 2017, Defendant filed a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b). (Doc. 25.) In the alternative, Defendant requested the Court transfer the case to the United States District Court for the District of New Jersey ("New Jersey"). (Id. at 9.) Defendant also requested the Court dismiss any potential dilution claim Plaintiff might have asserted in its complaint.[1] (Id. at 16.)

On October 2, 2017, Plaintiff filed an amended complaint. (Doc. 31.) First, Plaintiff alleges trademark infringement with respect to the Items. (Id. at 13.) Second, it alleges trademark dilution with respect to all Items. (Id. at 15.) Third, it alleges trademark infringement with respect to Defendant's website and social media marketing. (Id. at 19.) Fourth, it requests declaratory relief to determine title to the Jackets and the Silverware. (Id. at 22.) Fifth, it alleges the tort of trover with respect to the Items. (Id. at 23.) Sixth, it alleges false advertising against Defendant under the Lantham Act. (Id.) Seventh, it requests an injunction to prevent Defendant "from making false statements about [Plaintiff], using

---

[1] The Court notes "potential" dilution claim because Plaintiff did not allege a separate cause of action for dilution or even cite the dilution statute. Rather, it referred to dilution only in its paragraph setting forth subject matter jurisdiction and in the prayer for relief.

[Plaintiff's] trademarks, and selling [Plaintiff's] property."
(Id. at 25.)

On October 16, 2017, Defendant filed a new motion to dismiss in response to Plaintiff's amended complaint. (Doc. 37.) Defendant once again sought to dismiss the case for improper venue, or, in the alternative, to transfer the case to New Jersey. It did not, however, move to dismiss Plaintiff's dilution claim.

## II. DISCUSSION

### A. Motion to Dismiss for Improper Venue

Defendant first asks this Court to dismiss this action for improper venue. Venue in this case is governed by 28 U.S.C. § 1391. Section 1391(b)(1)-(3) establishes three categories of districts in which a plaintiff may properly bring suit:

> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue is always proper in any district that fits the requirements of either the first or second categories. Venue is proper in a district that fits the third category, however, only

when no other district fits the requirements of the first two categories. Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 578 (2013). Thus, the third category is "a fallback option: If no other venue is proper, then venue will lie in 'any judicial district in which any defendant is subject to the court's personal jurisdiction.'" Id. (emphasis in original).

Plaintiff chose to file in the Southern District of Georgia, therefore the Court must first determine whether this District is a proper venue under § 1391(b). Plaintiff asserts that its choice of venue is proper because: (1) Defendant "resides" in this District under § 1391(b)(1); and (2) a substantial part of the events giving rise to the claims occurred in this District under § 1391(b)(2). Defendant challenges both assertions. The Court finds that venue is proper because Defendant "resides" in this District under § 1391(b)(1).

Section 1391(c) defines residency for venue purposes. It states that a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). Plaintiff asserts that Defendant waived its right to challenge this Court's personal jurisdiction when it omitted that defense

5

in its first Rule 12 motion challenging venue. (Doc. 48 at 7.) According to Plaintiff, Defendant's waiver makes it "subject to" this Court's personal jurisdiction, and thus Defendant "resides" in this District under § 1391(b)(1). (Id.) Defendant, however, argues that venue and personal jurisdiction are separate defenses, thus "waiver of a personal jurisdiction defense does not automatically constitute a waiver regarding venue." (Doc. 37 at 4.)

As an initial matter, the Court agrees that Defendant waived its right to challenge personal jurisdiction. "[A] party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1218 n.21 (11th Cir. 2009)(citing Fed. R. Civ. P. 12(h)). Defendant did not challenge personal jurisdiction at the hearing for a preliminary injunction or in either of its Rule 12 motions challenging venue. Thus, Defendant waived any challenge to personal jurisdiction and is subject to this Court's personal jurisdiction.

The question, then, is whether a defendant who consents to personal jurisdiction by virtue of waiver is "subject to" that court's personal jurisdiction for purposes of section 1391(c)(2) and thus "resides" in that court's district under § 1391(b)(1).

The Court begins with the text of § 1391(c). See BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006) ("We start, of course, with the statutory text."). Section 1391(c)(2) states that a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). Section 1391(c)(2) says nothing about how or when a party must become "subject to" the court's personal jurisdiction. It states only that a defendant corporation resides in a district if it is subject to the court's personal jurisdiction. Thus, "subject to the court's personal jurisdiction with respect to the civil action in question" means "subject to the court's personal jurisdiction with respect to the civil action in question." However obtained. Whenever obtained.

Accordingly, this Court holds, as have numerous other courts, that an out-of-state corporation which consents to a court's personal jurisdiction by waiver is "subject to" that court's personal jurisdiction for purposes of § 1391(c)(2). See Dakota Provisions, LLC v. Hillshire Brands Co., 226 F. Supp. 3d 945, 959 (D. S.D. 2016) ("And because the defendants have consented to personal jurisdiction in South Dakota, they have also consented to venue in South Dakota as they are 'subject to the court's personal jurisdiction with respect to the civil

7

action in question.' Thus, each of the defendants 'reside' in South Dakota and are properly subject to venue in South Dakota under 28 U.S.C. § 1391(b)(1)." (citations omitted)); AT&T Corp. v. Teliax, Inc., No. 16-cv-01914-WHO, 2016 WL 4241910, *2 (N.D. Cal. Aug. 11, 2016) ("But, because Teliax did not contest personal jurisdiction, it is therefore 'subject to personal jurisdiction' in this district for the purposes of establishing venue."); Underberg v. Emp'rs Mut. Cas. Co., CV-15-112-BLG-CSO, 2016 WL 1466506, at *5 (D. Mont. Apr. 14, 2016) ("EMC has not challenged this Court's jurisdiction and, under Rule 12(h)(1), has waived its right to do so. Thus, it is subject to this Court's personal jurisdiction in this civil action."); Brenneman v. Great Wolf Lodge of Kansas City, LLC, Civil No. 4:15-cv-00683, 2015 WL 6082105, at *2 (W.D. Mo. Oct. 15, 2015) ("Because Defendants failed to raise the defense of personal jurisdiction in a timely manner, they have waived their objection to personal jurisdiction in this Court. As a result, pursuant to 28 U.S.C. § 1391(c), Defendants 'reside' in Missouri. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b)(1)."); Timm v. Goodyear Tire & Rubber Co., No. 2:14-CV-232-PPS-JEM, 2014 WL 6909015, at *3 (N.D. Ind. Dec. 8, 2014)("Harley-Davidson has not provided any argument or affidavit contesting personal jurisdiction in the Northern District of Indiana, thereby waiving the defense of lack of personal jurisdiction. The Court concludes that Harley-

8

Davidson is subject to this Court's personal jurisdiction and is thus deemed to reside in the Northern District of Indiana pursuant to 28 U.S.C. § 1391(c)(2), making this an appropriate venue pursuant to 28 U.S.C. § 1391(b). Accordingly, neither dismissal or transfer are appropriate."); see also 14D Federal Practice § 3811.1 ("[I]f an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under [section 1391].")

Because Defendant consented to this Court's personal jurisdiction by waiver, it is "subject to" this Court's personal jurisdiction under section 1391(c)(2) and thus resides in this District under § 1391(b)(1). Therefore, venue is proper in this District, and the Court **DENIES** Defendant's motion to dismiss.

### B. Motion to Transfer Venue

In the alternative, Defendant asks this Court to transfer this case to New Jersey. Transfer, however, is not easily obtained. First, the party seeking transfer has the burden of establishing that transfer is warranted. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). Second, a "'plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations,' and a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice for Section 1404(a) purposes." S.E.C. v. Lauer, 478 F. App'x 550, 554 (11th Cir. 2012) (quoting

Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996)); see also Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2010); Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013); Rowland v. Int'l Paper Co., 2011 WL 1457194, *3 (N.D. Ga. 2011).   Third, the district court has broad discretion when deciding whether to transfer a case.   England v. ITT Thompson Indus., Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).

Under Section 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" if transfer is based upon the convenience of the parties, the convenience of the witnesses, or the interest of justice.   28 U.S.C. § 1404(a).   Section 1404 thus requires courts to answer two questions.   The first: Could the action have been brought in the proposed transferee court?   Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).   The second: Do the § 1404 factors — (1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice — warrant transfer?   Id.

The parties dispute whether New Jersey is a venue in which Plaintiff could have originally brought this action. Nevertheless, the Court finds that, even assuming New Jersey is a proper venue, transferring venue would not be proper after weighing the § 1404(a) factors.

10

### 1. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." 15 Federal Practice, § 3849; see Lauer, 478 F. App'x at 555 (noting that transfer not required when transfer would inconvenience the other parties to the case). Defendant has failed to show either.

### a. This District Is Not Inconvenient for Defendant

Defendant argues that this District is inconvenient because: (1) "New Jersey is a more convenient location for the parties as the warehouse containing the [Items] are stored in New Jersey and the contracts with the consigners who have title to the [Items] are performed in New Jersey"; and (2) "each of [Defendant's] principals maintains a presence in New Jersey." (Doc. 37 at 16.) The Court finds neither argument persuasive.

First, the location of Defendant's warehouse does not show that this District is inconvenient. The warehouse only has significance because Defendant has chosen to store the Items there. Although this might have significance in the context of other legal disputes, it has no significance in determining which district is more convenient. Transferring the Items to this District is exceedingly easy and can be accomplished overnight with minimal expense.

11

Second, Defendant offers no explanation as to why the contracts between Defendant and the consignors support transfer. The issues in this case involve trademark infringements and rightful possession of the Items. They have very little, if anything, to do with the consignment contracts signed between Defendant and the consignors. And, even if they did, this Court is perfectly capable of interpreting the consignment contracts under New Jersey law.

Third, that Defendant's principals have a "presence" in New Jersey does not establish inconvenience sufficient to warrant transfer. Only one principal, Robert Zafian, lives in New Jersey. (Doc. 39.) The other, Michael Carey, lives in Massachusetts. (Doc. 38.) Additionally, while Defendant contends that Plaintiff can better afford to travel to New Jersey than Defendant can afford to travel to Augusta, Defendant gives no evidence that litigating in this District would cause it any undue expense or financial difficulties. Neither does Defendant give evidence that litigating in this District would place an undue strain on its business operations through excess time demands on its principals or other employees. In other words, Defendant has shown that New Jersey might be more convenient for it, but it has not given evidence that this District is truly inconvenient.

### b. New Jersey Would Be Substantially Inconvenient for Plaintiff

Defendant makes no argument that Plaintiff would not be substantially inconvenienced by a transfer. Rather, Defendant ignores the fact that this District is demonstrably more convenient for Plaintiff. Plaintiff is headquartered in this District, its employees who might be called to testify mostly live in this District, and any documents relating to its policies are most likely housed in this District. (Doc. 48 at 21.) These witnesses and documents will be key pieces of evidence when the parties attempt to establish the question of ownership which underlies Plaintiff's trover claim. Because so many crucial pieces of evidence and party witnesses are located in this District, the Court concludes that Plaintiff would be substantially inconvenienced by transferring this case to New Jersey.

In sum, Defendant has not shown that this District is inconvenient — or that New Jersey is more convenient — for the parties. 15 Federal Practice § 3849 (§ 1404(a)'s convenience of the parties factor refers "to all of the parties"). Defendant's evidence shows, at best, only that a transfer would "shift inconvenience from the defendant to the plaintiff." Lauer, 478 F. App'x at 554. Thus, the convenience of the parties weighs against transfer. See Garay v. BRK Elecs., 755 F. Supp. 1010,

1012 (M.D. Fla. 1991) (finding that the convenience of parties weighed against transfer because the defendant did not establish that the transferee district was more convenient).

## 2. Convenience of Witnesses

The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, may be the single most important factor to consider on a motion to transfer under § 1404(a). 15 Federal Practice § 3851; see also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. 2010) ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."); Bartonics, Inc. v. Power-One, Inc., 510 F. Supp. 2d 634, 637-38 (S.D. Ala. 2007) ("[A]side from the plaintiff's own choice of forum, the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses."); LaPenna v. Cooper Tire & Rubber Co., 2011 WL 2669469, *5 (M.D. Ala. 2011) ("[T]he most important factor in passing on a motion to transfer venue under § 1404(a) is the convenience of the witnesses.").

When evaluating the convenience of witnesses factor, courts consider the "relative abilities of the forum and the proposed transferee district to secure the live testimony of important witnesses at trial," the cost of willing witnesses to attend trial, and the cost of employee witnesses to attend trial. 15 Federal Practice § 3851. A court's evaluation, however, should

14

be "qualitative, not quantitative." Id. Thus, "one important or material witness may outweigh a great number of less important witnesses." Id.

In its request for transfer, Defendant argues that the majority of witnesses it intends to call do not reside in this District. (Doc. 37 at 13-14.) It also argues that the convenience of the witnesses who do reside in this District "should not be afforded great weight as they are hand-picked agents of [Plaintiff] and should be treated as party witnesses." (Id. at 15.) Finally, Defendant argues that traveling to New Jersey would be just as convenient, if not more convenient, for all of the "important, identifiable non-party witnesses." (Id.)

Defendant's arguments fail, however, because they show only that New Jersey might be just as convenient for witnesses, not that New Jersey is more convenient for witnesses. Defendant identifies multiple witnesses who live outside of this District, but only one witness who lives in New Jersey and only one who might be within driving distance to New Jersey. Furthermore, Defendant fails to address the fact that many of Plaintiff's witnesses live in this District and that these witnesses play an important role in proving a key element of Plaintiff's trover claim: ownership of the Jackets. In short, Defendant offers no evidence that this District is inconvenient or that New Jersey is more convenient for witnesses. Thus, the Court finds that

the convenience of witnesses factor weighs against transfer. See Garay, 755 F. Supp. at 1012 (finding that the convenience of witnesses weighed against transfer because the defendant did not establish that the transferee district was more convenient).

### 3.  Interest of Justice

The interest of justice prong under § 1404(a) is admittedly amorphous and subjective.  15 Federal Practice § 3854. Nevertheless, courts have identified several factors which are helpful when determining whether transfer is "in the interest of justice."  These factors include: (1) where the litigant is more likely to receive a speedy trial; (2) whether transfer will allow consolidation of litigation; (3) the relative familiarity with the relevant law; (4) the relationship of each community to the controversy; (5) comparative costs to each party of litigating in each forum; and (6) any obstacles to a fair trial. See In re Morgan Stanley, 417 F. App'x. 947, 949 (Fed. Cir. 2011); Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 978 (7th Cir. 2010); Terra Int'l, Inc. v. Miss. Chem. Corp, 119 F.3d 688, 696 (8th Cir. 1997).

Defendant offers only one argument for this prong. Defendant claims that "[it] cannot receive a fair trial by jury in Augusta, Georgia against Plaintiff due to pretrial publicity and jury bias." (Doc. 37 at 20.) Defendant argues that because Plaintiff has such a large economic impact in Augusta,

16

"[p]otential jurors — from business owners and taxi drivers to land owners and cashiers — have an economic incentive to see [Plaintiff] prevail in a case which would only serve to increase the grandeur of [the Masters] and stimulate local economies." (Id. at 21.)

In support of its pretrial publicity argument, Defendant cites the "presumed prejudice" standard. Under the presumed prejudice standard, "'where a [party] adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, jury prejudice is assumed and there is no further duty to establish bias.'" Coleman v. Kemp, 778 F.2d 1487, 1490 (11th Cir. 1985) (quoting Mayola v. Alabama, 623 F.2d 992, 997 (5th Cir. 1980)). "The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation." Id. at 1537 (internal quotations and citations omitted).

The presumed prejudice standard, however, might not even apply to civil cases. Coleman, the first case cited by Defendant in support of the standard, is a habeas case that addresses pretrial publicity and jury bias in an underlying criminal trial. 778 F.2d at 1539. And McRae v. Perry, No. CV 211-193, 2012 WL 3886094, at *1 (S.D. Ga. Sept. 6, 2012), the second case cited by Defendant in support of the standard,

17

applies the presumed prejudice standard without analyzing whether it applies to civil as well as criminal trials. Additionally, this Court's own research revealed no district court opinions analyzing the propriety of applying the presumed prejudice standard to civil trials nor any Eleventh Circuit or Supreme Court opinions actually applying the presumed prejudice standard to civil trials.

But assuming that the presumed prejudice standard does apply, Defendant has failed to establish it. Despite needing to "adduce evidence" of "inflammatory, prejudicial pretrial publicity" that "pervades or saturates a community," Defendant did not identify a single article discussing the present case. Coleman, 778 F.2d at 1490. In other words, Defendant produced no evidence of pretrial publicity, much less pretrial publicity that was "inflammatory" or "prejudicial."

Defendant's argument of the potential for actual bias among jurors also fails. Defendant introduced no evidence indicating how many potential jurors Plaintiff employs or contracts with, how many potential jurors might have a connection to Plaintiff sufficient to consider them as having an economic interest in the outcome of the case, or why no other division in this District could not supply unbiased jurors. See Haworth, Inc. v. Herman Miller, Inc., 821 F. Supp. 1476, 1481 (N.D. Ga. 1992) (finding "insufficient evidence to show prejudice or pecuniary

bias to the prospective juror pool"); <u>Bell v. Rock-Tenn</u>, Civil Action No. 2:14cv1167-MHT, 2015 WL 1120271, at *4 (M.D. Ala. Mar. 12, 2015) ("When a party alleges that he will not receive a fair and impartial jury in a more convenient forum due to . . . jurors' pecuniary interest in the outcome, that party must demonstrate the probability of actual prejudice with evidence and cannot rely on mere speculation.").

Defendant also provides no evidence that the Court's jury selection procedures will be insufficient to expunge any biased jurors. <u>See</u> <u>McDonough Power Equip., Inc. v. Greenwood</u>, 464 U.S. 548, 554 (1984) ("<u>Voir dire</u> examination serves to protect [the right to a fair trial] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on <u>voir dire</u> may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges."); <u>Bell</u>, 2015 WL 1120271 at *4 ("Ordinarily, and particularly where all other factors of efficiency, justice, and convenience weight heavily in favor or litigating in a forum allegedly subject to concerns of a biased jury pool, such concerns can be quite adequately addressed by the use of <u>voir dire</u> in the jury selection process."); <u>BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.</u>, No. 3-08-CV-1779-L, 2009 WL 918459, at *6 (N.D. Tex. Apr. 3, 2009) ("If the case

proceeds to trial, the court and the lawyers can use proven voir dire techniques to eliminate potential jurors with any actual bias.").

After weighing all the 1404(a) factors, the Court concludes that Defendant has not established that Plaintiff's choice of forum is "clearly outweighed by other considerations." Lauer, 478 F. App'x at 554. Defendant has not shown that this District is inconvenient for either party, that New Jersey is more convenient for witnesses, or that it cannot receive a fair trial in this District. Accordingly, the Court **DENIES** Defendant's motion to transfer.

## C. Motion to Seal

The final issue before the Court is Plaintiff's Motion to Permanently Seal Defendant's Exhibit 1 to Document 12. (Doc. 19.) Exhibit 1 (the "List") is a working inventory list of, presumably, all Green Jackets kept on Plaintiff's property. It contains allegedly sensitive information, such as: the first and last names of Augusta National members; the manufacturer, coat size, and serial number of each jacket; the date each member was charged for their jacket; and the date alterations were made. (Doc. 12-1.) Defendant submitted the List as evidence that "Plaintiff did not own a single green jacket that was produced prior to 1967." (Doc. 11 at 3.) During the hearing on the preliminary injunction, Plaintiff made an oral motion to seal

20

the List on the basis that it contained highly confidential information and was illicitly obtained by Defendant. After hearing oral argument, the Court temporarily sealed the List but instructed the parties to file written briefs addressing the issue. The Court now **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

In civil proceedings the public has a presumptive right under the common law to review and copy documents filed with the courts. See Chicago Tribune Co. v. Brigdestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001). This right is referred to as the "common law right of access." Id. It applies to any "material filed in connection with any substantive pretrial motion unrelated to discovery" as well as any motion, dispositive or non-dispositive, "presented to the court to invoke its power or affect its decision." Romero v. Drummond, Co., 480 F.3d 1234, 1245 (11th Cir. 2007).

The common law right of access recognizes that "'the operations of the courts and judicial conduct of judges are matters of utmost public concern.'" Id. at 1244 (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)). It also acknowledges the need and desire of citizens to "'keep a watchful eye on the workings of public agencies.'" Id. (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978); see also Shane Group, Inc. v. Blue Cross Blue Shield of Mich., 825

F.3d 299, 305 (6th Cir. 2016) ("[T]he public is entitled to assess for itself the merits of judicial decisions."). Thus, it is "an essential component of our system of justice [and] is instrumental in securing the integrity of [the judicial] process." Chicago Tribune, 263 F.3d at 1311.

To overcome the common law's presumption of public access, the moving party must establish "good cause." Romero, 480 F.3d at 1246. "Good cause" exists when a party's interest in keeping information confidential outweighs the public's interest in accessing that information. Id.

When balancing the public's right of access against the moving party's privacy interests courts consider a variety of factors, including: (1) "whether allowing access would impair court functions or harm legitimate privacy interests"; (2) "the degree of and likelihood of injury if the information were made public"; (3) "the reliability of the information"; (4) "whether there will be an opportunity to respond to the information"; (5) "whether the information concerns public officials or public concerns"; (6) "the availability of a less onerous alternative to sealing the documents"; and (7) "a party's privacy or proprietary interest in information." Id.

Applying these factors, the Court concludes that Plaintiff has shown good cause to exclude the public from accessing members' names, but not any other information in the List.

## 1. Member's Names

With regards to the first and last names of its members, Plaintiff's right of privacy outweighs the public's right of access. First, redacting the members' names does not harm the public interest. The heart of the right of access is the belief that "the public has an interest in ascertaining what evidence and records [courts] have relied upon in reaching [their] decisions." Shane, 825 F.3d at 305. In this case, with the exception of the three members who wore the jackets put up for auction, the names of Plaintiff's members are irrelevant to the issues before the Court. Defendant produced the List to prove that Plaintiff did not own Green Jackets issued prior to 1967. The List's evidentiary value, therefore, lies in the records concerning the number of jackets in Plaintiff's inventory and the date in which they potentially entered the inventory, not in the members' names. Thus, the members' names do not help the public assess this Court's decisions, and redacting them will not harm the public interest.

Second, Plaintiff has a legitimate and significant privacy interest in protecting its members' names. Plaintiff asserts that it "has always endeavored to keep the content of its documents, such as [the List], private and not subject to public disclosure." (Doc. 28 at 2.) To support its assertion, Plaintiff filed copies of confidentiality agreements that it claims all employees were required to sign in the years 1999,

2006, and 2016. (Id.) The agreements state that employees should not disclose, among other details, the "names of members or guests and the fact that such persons are members of or guests at the Club, personal information about members, guests, Tournament players or their respective families; information concerning members', guests', or Tournament players' businesses or business transactions. . . ." (Id. at 7.) Plaintiff also filed an affidavit by its Human Resource Manager that asserts "the privacy and confidential atmosphere of the club is valuable [sic] asset of [Plaintiff]." (Doc. 28-1 at 2.) Thus, based on Plaintiff's extensive efforts to keep confidential its members' names and its business interest in the same, the Court finds that Plaintiff has a privacy interest significant enough to outweigh the public's interest in access.

Finally, the Court's balancing test is "informed by a 'sensitive appreciation of the circumstances that led to'" the List's production. Chicago Tribune, 263 F.3d at 1311 (quoting Nixon, 435 U.S. at 598, 602-603). Plaintiff asserts that Defendant acquired the List illicitly. (Doc. 19 at 1.) Plaintiff's Human Resource Manager stated in her affidavit that "[Plaintiff] has never authorized any employee to disclose any information about Green Jackets to Green Jacket Auctions, Inc., Ryan Carey, or Bob Zaffian. Any employee's disclosure of any 'confidential Club information' would be a violation of the

Confidentiality Agreement each employee had signed." (Doc. 28-1 ¶ 12.) In response, Defendant claims that "[a]s detailed in the Affidavit of Ryan Carey, [the List] was provided by [Plaintiff] to Mr. Carey." (Doc. 23 at 1.) But Defendant has offered no sworn testimony that Plaintiff authorized any of its employees to disclose the List. Mr. Carey's affidavit states only that "the [List] was provided to [Defendant] by Plaintiff's employee. . . ." (Doc. 12 ¶ 23.) It makes no sworn allegation that Plaintiff authorized the employee to give Mr. Carey the List. (Id.) Thus, the Court finds that the "circumstances that led to" Defendant's production of the List — that Defendant likely obtained the document when an employee violated his/her confidentiality agreement with Plaintiff — weigh against allowing the public to access the members' names contained in the List.

### 2. All Other Information

With regards to all other information in the List, however, the Court finds that the public's right of access outweighs Plaintiff's right of privacy. First, sealing any other information would harm the public's ability to assess this Court's decisions. The other information is relevant to Defendant's assertion that Plaintiff did not own any jackets prior to 1967. Without it, the public would have a difficult time assessing the propriety of this Court' preliminary injunction order and potentially any future orders concerning the Jackets.

Second, Plaintiff's privacy interest in the additional information is not significant. Plaintiff asserts that "the maker, the dates, and the physical location of the Green Jackets are all highly protected." (Doc. 28 at 5.) Plaintiff, however, offers no explanation for why that information is highly protected or why releasing it would be harmful. Neither can this Court supply one. The List is over ten years old, and the additional information — particularly without any connection to a named member — is, at best, mundane. To overcome the right of access, Plaintiff must make a more compelling and factually specific argument. See Romero, 480 F. 3d at 1247 (noting that "stereotyped and conclusory statements" do not establish good cause); Shane, 825 F.3d at 305-06 ("The proponent of sealing therefore must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." (citations and quotations omitted)).

In sum, Plaintiff has shown that its privacy interest in its member's names outweighs the public's interest in access, but Plaintiff has not shown that its privacy interest in any other information in the list outweighs the public's interest in access. Thus, the Court finds that partial redaction of the document is an acceptable, less onerous alternative to sealing the entire document. Romero, 480 F.3d at 1246. Accordingly, the Court **ORDERS** Defendant to redact the first and last name of all

26

members on the List as well as any other entry or notation that may contain any individual's name. Defendant **SHALL** then submit under seal the redacted list for the Court's approval. Upon the Court's approval, Defendant **SHALL** file the redacted list with the Court.

### III. CONCLUSION

The Court **DENIES** Defendant's motion to dismiss for improper venue (doc. 37) because it finds that Defendant resides in this District as defined in § 1391(c)(2) and venue is proper under § 1391(b)(1). The Court **DENIES** Defendant's alternative motion to transfer to New Jersey (doc. 37) because it finds that Defendant has failed to show that Plaintiff's choice of forum is clearly outweighed by the considerations listed in § 1404(a). The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to seal (doc. 19) because it finds that Plaintiff has overcome the common law right of access with regards to the members' names in the List. Accordingly, the Court **ORDERS** Defendant to redact the first and last name of all members on the List as well as any other entry or notation that may contain any individual's name. Defendant **SHALL** submit under seal the redacted list for the Court's approval. Upon the Court's approval, Defendant **SHALL** file the redacted list with the Court. The Clerk **SHALL** keep the original List (doc. 12-1) permanently sealed. Finally, the Court **DENIES** as **MOOT**

Defendant's original motion to dismiss (doc. 25) and Plaintiff's motion for venue related discovery (doc. 49).

**ORDER ENTERED** at Augusta, Georgia this _8th_ day of February, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA